# In the United States Court of Federal Claims

Nos. 18-862C, 18-872C, 18-873C, 18-889C, 18-894C, 18-895C, 18-901C, 18-946C
(consolidated)

(Filed: September 14, 2018)

| | |
|---|---|
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \* | |
| \* | |
| FMS INVESTMENT CORP., *et al.*, \* | |
| \* | |
| Plaintiffs, \* | |
| \* | Post-Award Bid Protest; |
| v. \* | Department of Education Loan |
| \* | Collections; Cancellation of |
| THE UNITED STATES, \* | Solicitation; Motion for Permanent |
| \* | Injunction; Likelihood of Success |
| Defendant, \* | on the Merits; Irreparable Harm; |
| \* | Balance of Hardships; Public |
| and \* | Interests; 28 U.S.C. § 1491(b); |
| \* | RCFC 65(d); Granting Injunctive |
| ALLTRAN EDUCATION, INC., \* | Relief. |
| \* | |
| Defendant-Intervenor. \* | |
| \* | |
| \* | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \* | |

*David R. Johnson*, with whom were *Tyler E. Robinson* and *Ryan D. Stalnaker*, Vinson & Elkins LLP, Washington, D.C., for Plaintiff FMS Investment Corp.

*Jonathan S. Aronie*, with whom was *Townsend L. Bourne*, Sheppard, Mullin, Richter & Hampton LLP, Washington, D.C., for Plaintiff Account Control Technology, Inc.

*William M. Jack*, with whom were *William C. MacLeod*, *David E. Frulla*, and *Amba M. Datta*, Kelley Drye & Warren LLP, Washington, D.C., for Plaintiff GC Services Limited Partnership.

*Jonathan D. Shaffer*, with whom were *Mary Pat Buckenmeyer* and *Todd M. Garland*, Smith Pachter McWhorter PLC, Tysons Corner, VA, for Plaintiff Pioneer Credit Recovery, Inc.

*John R. Prairie*, with whom were *Brian G. Walsh* and *Cara L. Lasley*, Wiley Rein, LLP, Washington, DC, for Plaintiff Automated Collection Services, Inc.

*David T. Ralston Jr.*, with whom were *Frank S. Murray* and *Krista Nunez*, Foley & Lardner LLP, Washington, DC, for Plaintiff Windham Professionals, Inc.

*Edward H. Meyers*, Stein Mitchell Cipollone Beato & Missner LLP., Washington, DC, for Plaintiff Continental Service Group, Inc.

*Thomas Andrew Coulter*, with whom was *Nicole Hardin Brakstad*, O'Hagan Meyer PLLC, Richmond, VA, for Plaintiff Progressive Financial Services, Inc.

*David R. Pehlke*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Sarah Falk*, General Attorney, Office of the General Counsel, U.S. Department of Education, for Defendant.

*Daniel R. Forman*, with whom were *James G. Peyster* and *Robert J. Sneckenberg*, Crowell & Moring LLP, Washington, DC, for Defendant-Intervenor Alltran Education, Inc.

<u>OPINION AND ORDER GRANTING PERMANENT INJUNCTION</u>

WHEELER, Judge.

In this post-award bid protest, Plaintiffs challenge the Department of Education's ("ED" or "the agency") decision to cancel a solicitation for student loan debt collection services. Plaintiffs are eight Private Collection Agencies ("PCAs") that submitted bids on the solicitation. They assert that ED's decision to cancel the solicitation lacked a rational basis, and was therefore unlawful. Each Plaintiff has filed a motion for judgment on the administrative record and a motion to permanently enjoin ED from cancelling the solicitation.

The Government opposes Plaintiffs' motions and has filed a cross-motion for judgment on the administrative record. The Government contends that the administrative record ("AR") demonstrates that ED acted rationally in cancelling the solicitation because it plans to implement a new debt collection program that will not require PCA services.

After considering the AR, the Court finds that ED either did not have, or did not sufficiently document, a rational basis for its decision to cancel the solicitation. Accordingly, Plaintiffs' cross-motion for judgment on the administrative record is GRANTED. Plaintiffs' motion for a permanent injunction barring ED from cancelling the solicitation is also GRANTED. The Government's cross-motion for judgment on the administrative record is DENIED.

<u>Background</u>

On December 11, 2015, ED issued Solicitation No. ED-FSA-16-R-0009 ("the solicitation") for the collection and administration of defaulted student loans. <u>Cont'l Serv.'s Grp., Inc. v. United States</u>, 130 Fed. Cl. 798, 799 (2017). In December 2016, ED awarded seven PCA contracts. <u>Cont'l Serv.'s Grp., Inc. v. United States</u>, 722 Fed. App'x. 986, 990 (Fed. Cir. 2018). Twenty-two disappointed offerors protested the contract awards to the Government Accountability Office ("GAO"), and on March 27, 2017, GAO recommended that ED take corrective action. <u>Id.</u> The following day, one of the protesters withdrew its protest at the GAO and filed a new protest with this Court to challenge the December 2016 contract awards. <u>Id.</u>

On May 19, 2017, ED announced that it would take corrective action. <u>Id.</u> at 992. On December 9, 2017, ED terminated for convenience the seven previously awarded PCA contracts. <u>Cont'l Serv.'s Grp. Inc. v. United States</u>, COFC No. 17-449, Dkt. No. 231. On January 11, 2018, pursuant to its revised solicitation, ED awarded two contracts to Performant Recovery, Inc. and Windham Professionals, Inc. AR 27. Twenty disappointed offerors filed protests with this Court challenging the January 2018 contract awards. <u>FMS Inv. Corp v. United States</u>, 138 Fed. Cl. 152, 154 (2018).

On February 14, 2018, this Court dismissed the protests challenging the December 2016 awards, roughly one month after ED completed corrective action. <u>Id.</u> Between February 2, 2018, and February 16, 2018, Plaintiffs in the January 2018 bid protest filed motions to preliminarily enjoin ED from proceeding with the January 2018 contract awards. <u>Id.</u> On February 26, 2018, the Court granted these motions in part. <u>Id.</u>

On March 19, 2018, the Government filed a notice with this Court stating that ED was unlikely to pursue continued litigation in the January 2018 bid protest. <u>Id.</u> at 155. In response, this Court suspended briefing. <u>Id.</u> The Government later indicated that ED would announce how it would proceed with the procurement on May 4, 2018. <u>Id.</u>

Instead, ED cancelled the solicitation on May 3, 2018. AR 27. The cancellation notice discusses "[Federal Student Aid]'s new vision" to utilize "enhanced servicer(s)" to administer student debt beginning 90 days after a loan becomes delinquent and continuing through the resolution of any later default. AR 27. PCAs service borrower accounts that are delinquent by 360 days or more. AR 27. The cancellation notice reasons that ED will no longer require PCA services because the "enhanced servicers" will handle all accounts 90 days or more delinquent for the life of those accounts. AR 27–28. As a result, ED's need for PCA services "will diminish rapidly in the coming months and ultimately become non-existent." AR 27.

The notice also states that "the current volume of defaulted borrowers portfolio can be handled successfully by the eleven (11) small business[]" debt collectors currently under

contract, which provide the same services as PCAs.  AR 28.  ED's small business contracts expire in September 2019, with an option for ED to extend them through September 2024. AR 28.  The notice asserts that the eleven small businesses have capacity to process 750,000 new accounts per month, and that ED only needs to place 120,000 new accounts per month.  AR 28.  Thus, the notice claims that because ED's "needs and requirements for servicing student loans in delinquency and default will change significantly in the near future," the PCA contracts "are no longer needed."  AR 27.

On May 7, 2018, the Government filed a motion to dismiss the protests challenging the January 2018 contract awards and lift the February 26, 2018 preliminary injunction, arguing that ED's decision to cancel the solicitation rendered Plaintiffs' claims moot. FMS, 138 Fed. Cl. at 155.  In response, the Plaintiffs in that case moved for leave to add a claim that ED's decision to cancel the solicitation was arbitrary, capricious, and unlawful. Id.  For judicial efficiency reasons, this Court denied Plaintiffs' request.  Id. at 157–58. However, this Court did not preclude Plaintiffs from filing a separate action solely to challenge ED's decision to cancel the solicitation.  Id. at 158–59.

## Procedural History

On June 18–19, 2018, the eight Plaintiffs named here filed complaints challenging ED's decision to cancel the solicitation as "undocumented, unreasonable, irrational, arbitrary, and capricious."  Compl. ¶ 127.  Between June 20, 2018, and June 25, 2018, the Court issued three orders consolidating Plaintiffs' challenges into a single action.  Dkt. No.s 13, 17, 18.  On June 29, 2018, the Government filed the AR.  Dkt. No.s 47, 48.

On July 13, 2018, Plaintiffs submitted Sealed Motions for Judgment on the Administrative Record.  Dkt. No.s 64–71.  On July 27, 2018, Defendant submitted its response to Plaintiffs' motions and its Cross-Motion for Judgment on the Administrative Record.  Dkt. No. 81.  Briefing fully concluded on August 17, 2018, Dkt. No. 96, and the Court heard oral argument on August 30, 2018.  Dkt. No. 98.

## Discussion

### A. Jurisdiction and Standard of Review

The Tucker Act grants this Court subject matter jurisdiction over bid protests.  28 U.S.C. § 1491(b)(1) (2012).  In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4) (2012); 5 U.S.C. § 706 (2012).  Under the APA, this Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (2012); see Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004).

4

An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion."  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001).  An agency cannot "entirely fail[] to consider an important aspect" of a problem.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) ("MVMA"). Rather, an agency must articulate a "rational connection between the facts found and the [policy] choice made."  Id. (citation omitted).  Furthermore, when an agency alters a past policy, it must "supply a reasoned analysis for the change beyond" what may be required if the agency had not acted in the first instance.  Id. at 42.

Where an agency fails to undertake a review of relevant data, or fails to document that review, and articulate a satisfactory explanation for its conclusions, the Court must conclude that the agency has acted irrationally.  See Gulf Gr. Inc. v. United States, 61 Fed. Cl. 338, 351 (2004); AshBritt v. United States, 87 Fed. Cl. 344, 371–72 (2009).

The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its decision.  Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009).  But the Court will "not supply a reasoned basis for the agency's action that the agency itself has not given."  MVMA, 463 U.S. at 43 (citation omitted).

B.  Department of Education's Decision to Cancel the Solicitation

The Government argues that ED's decision to cancel the solicitation is a logical result of the agency's plan to implement the enhanced servicer program.  The Government further argues that the AR adequately supports ED's planned policy change.  Plaintiffs argue that the AR does not adequately support ED's "vision" for the enhanced servicer program, and therefore ED's decision to cancel the solicitation based on the AR was irrational, arbitrary, and capricious.  The AR supports the Plaintiffs' argument.

The AR is scant; it is just 33 pages long.  And it appears slipshod.  The cancellation notice constituted ED's first public announcement of the enhanced servicer program.  Both the notice and ED's internal memorandum discussing the program are dated May 3, 2018. And the notice flatly acknowledges that the program still needs to be reviewed for compliance with applicable laws and regulations.  AR 28.

Furthermore, the AR is missing critical information about the enhanced servicer program.  The AR does not include any plan or timeline for implementing the program.  It does not include a request for proposals, or any mention of what that request might look like.  It does not refer to a source of funding.  It does not even include a copy of the solicitation that ED cancelled to clear a path for the enhanced servicers.

The AR also lacks thorough estimates of current and future defaulted loan volumes and loan processing capacity.  The cancellation notice assumes that enhanced servicers will

begin processing loans "in the near future." AR 27.  But it sheds no light on exactly when the enhanced servicers will begin processing loans, or what the enhanced servicers' processing capacity will be at any point in the future.

The cancellation notice asserts that the eleven small business contractors are sufficient to process the current volume of defaulted loans until the enhanced servicers take over at some point in the future.  AR 28.  But the AR does not identify the source of these capacity estimates or explain how the data was compiled.  Nor does the AR include any information regarding the small business' future loan processing capacity.

Even if the AR included projections for small business and enhanced servicer processing capacities—and those projections were accurate—the cancellation notice's conclusion that their combined capacity will be sufficient at any point in the future would still be suspect because the AR does not contain projected loan volumes beyond December 2018.  The agency's internal memorandum discussing the enhanced servicer program notes that from December 2016 to December 2017, ED's student debt holdings increased by nineteen percent.  AR 16–17.  If this trend is any guide, ED could reasonably anticipate increasing loan volumes over the next several years, but ED does not address future loan volumes at all.

If ED anticipates loan volume growth, it failed to account for it in the AR.  If ED anticipates loan volumes levelling off or falling, it failed to explain the basis for this conclusion.  If ED assumes that current capacity will be sufficient until the enhanced servicer program is implemented—a goal for which ED apparently has no plan and no timeline—the AR provides no support for this assumption.  ED "entirely failed to consider," MVMA, 463 U.S. at 43, the interactions between future loan volumes, future small business capacity, and future enhanced servicer capacity over any timeline for implementing the enhanced servicer program.

The cancellation notice and the AR purport to outline a significant policy change.  ED had clearly planned for PCAs to continue to administer defaulted student loans as recently as January 2018 because the agency awarded two PCA contracts that month.  Yet not four months later, in a procurement cancellation notice, ED declared a new direction and an end to contracting for PCA services.  ED needs to provide a "reasoned analysis" for the policy change.  See MVMA, 463 U.S. at 42.  For all the reasons above, it has failed to do so.  The AR before the court is not enough to show that ED's decision to cancel the solicitation was rational.

C.  Legal Standard for Permanent Injunction

In a bid protest, this Court can issue an injunction pursuant to 28 U.S.C. § 1491(b) and RCFC 65(d).  In deciding whether to grant a permanent injunction, a court considers (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff will suffer

irreparable harm without an injunction; (3) whether the balance of the hardships favors an injunction; and (4) whether an injunction is in the public interest.  PGBA, LLC v. United States, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).  First, for the reasons stated above, Plaintiffs have succeeded on the merits.

Second, Plaintiffs would suffer irreparable harm if the Court does not issue an injunction.  The "loss of potential work and profits from a government contract [can] constitute[] irreparable harm."  Macaulay-Brown, Inc. v. United States, 125 Fed. Cl. 591, 606 (2016) (citation omitted).  The relevant inquiry is whether a plaintiff has an adequate alternative remedy.  Id. (citation omitted).  Plaintiffs have invested substantial time, effort, and resources in competing for ED contracts.  ED's arbitrary cancellation of the solicitation deprived them of the opportunity to compete for these contracts.  Under the circumstances, there is no adequate remedy other than an injunction.

Third, the balance of hardships favors the Plaintiffs.  Resurrecting the solicitation and returning the procurement to the May 2, 2018 status quo will not prevent ED from continuing to develop its enhanced servicer program.  On the other hand, Plaintiffs depend on ED debt collection contracts to survive.

Fourth, an injunction would serve the public interest.  The Government has not shown that reviving the procurement would harm ED, and the public interest always favors integrity in the federal government procurement process.  See Starry Assoc.'s v. United States, 127 Fed. Cl. 539, 550 (2016) (citation omitted).

The Court has evaluated the Government's other arguments and finds them unpersuasive.  Therefore, the Court will set aside ED's May 3, 2018 cancellation decision and return the procurement to its posture as of May 2, 2018.

D. Department of Education's Corrective Action Recalling Progressive Financial Services' Accounts

Finally, the Court turns to Progressive Financial Services, Inc.'s ("Progressive") additional claim that ED must return its expired in-repayment accounts.  This claim is meritless because Progressive's Award Term Extension expired in April 2017.  Progressive is not entitled to retain old accounts after its contract expired.  Cont'l Serv. Grp., Inc. v. United States, 722 Fed. Appx. 986, 996 (Fed. Cir. 2018).  Therefore, as the Federal Circuit has already held, Progressive's theory of harm is speculative.  Id.

Conclusion

For the reasons above, the Court GRANTS Plaintiffs' motion for judgment on the administrative record and GRANTS Plaintiffs' motion to permanently enjoin the Department of Education from cancelling Solicitation No. ED-FSA-16-R-0009.  The Court

DENIES the Government's motion for judgment on the administrative record.  No costs are awarded to either party.

The Court does not suggest what further action the Department of Education may take.  Rather, the Court holds only that the administrative record before it does not support the agency's May 3, 2018 decision to cancel the solicitation.  The Court does not address any of the parties' arguments based on information outside of the administrative record.

Accordingly, it is ORDERED that the United States of America, the United States Department of Education, and their officers, agents, servants, employees, and representatives are permanently ENJOINED, pursuant to RCFC 65(d), from cancelling Solicitation No. ED-FSA-16-R-0009.  The clerk is directed to close the case.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge
